**CITY OF ENID ex rel. VERSLUIS v. ROBINSON et al.**

Civ. No. 451.

District Court, W. D. Oklahoma.

July 18, 1941.

924

L. W. Randolph and Chal S. Wheeler, both of Muskogee, Okl., for plaintiff.

Geo. Howard Wilson, Simons, McKnight, Simons, Mitchell & McKnight, Otjen & Carter, and Coldiron & Coldiron, all of Enid, Okl., and Everest, McKenzie & Gibbens and O. K. Wetzel, all of Oklahoma City, Okl., for defendants.

VAUGHT, District Judge.

On the 21st day of October, 1929, the City of Enid, Oklahoma, hereinafter referred to as "the city", through its mayor and commissioners, passed and approved Ordinance No. 1701, whereby it approved, ratified and confirmed the report of the appraisers, appointed by it, in appraising and apportioning the improvement benefits in Street Improvement District No. 222.

In such assessing ordinance, which was duly published, the city assessed against itself those portions of the cost of the paving improvements in front of lots or tracts in two irregular blocks, which it deemed in excess of the benefits accruing to said lots or tracts. This was authorized by Section 21 of the 1923 Street Improvement Act, Ch. 173, S.L.1923, 11 Okl.St.Ann. § 101, which, among other matters, provides: "When triangular or other irregularly shaped lots or tracts are to be assessed for any such improvement, the cost for such improvements in excess of the benefits accruing to such lots or tracts shall be assessed against and borne by the city or town."

The defendant city has denied liability, asserting that such assessment against the city was a debt imposed by law and not one voluntarily assumed by the city, and that such debt, exceeding the income and revenue provided for the year in which assessed and not having been authorized by three-fifths of the voters, was in violation of Section 26, Article 10, of the Oklahoma State Constitution, Okl.St.Ann.

Here is a strange situation. The city, acting through its proper officials, initiated the street improvement district. The ap-

praisers appointed by the city, in accordance with the paving statute, apportioned the amounts of the improvement benefits that the lots or tracts in this irregular block should bear, and apportioned against the city the cost of the improvement in excess of such benefits. The governing body of the city approved the appraisers' report, and passed and published the assessing ordinance. The taxpayers of the city had notice of it, and since no protests were filed, it is assumed that they desired to have the street improvements made, and considered them worth those portions the benefit assessments levied against the city. And now, the city insists that it should not be required to pay such assessments.

The aforesaid section of the statute, under which this procedure was accomplished, further provides: "The determination by the governing body of the amount of benefits as herein provided shall be conclusive upon the owners of the property assessed and shall not be subject to review by any court."

In other words, legislative power was conferred upon the governing body of the city to levy such assessments. But the 1923 Act goes much farther. Section 30 thereof, 11 Okl.St.Ann. § 108, states: "No suit shall be sustained to set aside any assessment or to enjoin the governing body of any city or town from levying or collecting any such assessment, or installment thereof, or interest or penalty thereon, or issuing the bonds, or providing for their payment or contesting the validity thereof on any ground, or for any reason, other than for the failure of such governing body to adopt and publish the resolution declaring the necessity for such improvements and the publication thereof as provided in Section 5 of this Act, and to give notice of the hearing on the return of the appraisers unless such suit shall be commenced not more than fifteen (15) days after the publication of the ordinance levying assessments, and no suit shall be sustained after the work has been completed and accepted by such city or town, except for failure to give such notice of the preliminary resolution of necessity or the failure to give the notice of the hearing on such return of the appraisers; and provided, further, that in the event any special assessment shall be found to be invalid or insufficient, in whole or in part, for any reason whatever, the governing body may at any time in such manner provided for levying an original assessment proceed to cause a new assessment to be made and levied which shall have like force and effect as an original assessment."

In construing this section and its corresponding predecessor prior to 1923, in a long line of cases the Oklahoma Supreme Court has held that where the municipality has acquired jurisdiction to make street improvements and no protest or objection is filed, a property owner knowingly standing by while the improvement, beneficial to his property, is being made, will be deemed to have ratified same, and will be estopped by his laches from seeking relief in equity against the assessments long after they have been made. See, Weaver et al. v. City of Chickasha et al., 36 Okl. 226, 128 P. 305; City of Bartlesville et al. v. Holm et al., 40 Okl. 467, 139 P. 273, 9 A.L.R. 627; Norris et al. v. City of Lawton et al., 47 Okl. 213, 148 P. 123; City of Ardmore et al. v. Fraley et al., 65 Okl. 14, 162 P. 684; City of Ardmore et al. v. Appollos et al., 62 Okl. 232, 162 P. 211; Goodholm & Sparrow Inv. Co. v. Western Paving Co. et al., 48 Okl. 42, 150 P. 110; Wey v. City of Hobart et al., 66 Okl. 175, 168 P. 433; Partee v. Cleveland Trinidad Paving Co., 70 Okl. 31, 172 P. 945, 9 A.L.R. 606; Bickel et al. v. Warner-Quinlan Asphalt Co. et al., 70 Okl. 136, 174 P. 537.

The Oklahoma cases also hold that, after expiration of the limitation period set up in such statute, no action may be maintained to enjoin or avoid the assessments except on the question of jurisdiction. See, Shultz v. Ritterbusch et al., 38 Okl. 478, 134 P. 961; Wheeler v. City of Muskogee, 51 Okl. 48, 151 P. 635; City of Chickasha et al. v. O'Brien et al., 58 Okl. 46, 159 P. 282; Warner-Quinlan Asphalt Co. et al. v. Smith et al., 68 Okl. 263, 173 P. 516; Bickel v. Warner-Quinlan Asphalt Co., supra; Crosslin et al. v. Warner-Quinlan Asphalt Co. et al., 71 Okl. 286, 177 P. 376; City of Muskogee et al. v. Burford et al., 77 Okl. 174, 186 P. 949; Oliver et al. v. Pickett et al., 79 Okl. 315, 193 P. 526; Edmonds et al. v. Town of Haskell et al., 121 Okl. 18, 247 P. 15, error dismissed, 273 U.S. 647, 47 S.Ct. 246, 71 L.Ed. 821; Bocox et al. v. Town of Bixby et al., 114 Okl. 269, 247 P. 20; Pointer et al. v. Town of Chelsea et al., 125 Okl. 278, 257 P. 785; Town of Burbank et al. v. Sheel, 131 Okl. 292, 268 P. 1106; Wright et al. v. City of El Reno et al., 168 Okl. 594, 35 P.2d 473.

Since the property owners, not having filed timely protest, are held to have acquiesced in the making of the improvements and the assessment of the benefits thereof against their properties, the rule should be as vigorously invoked against the city, whose official acts created the street improvement district. It issued its bonds to the investing public. In said bonds, over its signature, the city represented as follows: "And it is hereby declared and certified that all acts, conditions and things required to be done and to exist precedent to and in making the said improvements and levying of said assessments and issuing of this series of bonds have been properly done, happened and performed and do exist in regular and due form, time and manner as required by the constitution and laws of the State of Oklahoma, and that the total amount of said assessments and of bonds issued on account of said improvements including this bond, do not exceed any constitutional or statutory limitation."

The city contends that it is not bound by the recitations in its bonds because the portions of the assessments which it levied against itself had the effect of incurring indebtedness in that year in excess of the income and revenue provided by the city for that year. It relies on Hood et al. v. Jones et al., 174 Okl. 372, 50 P.2d 1124.

■ The fact situation in that case is similar to the facts now before the court, but said case was rendered in October, 1935, and such decision cannot impair the rights of bondholders acquired in 1929. The law as it existed when the contract was made, and the legal interpretation of such law as announced by the State Supreme Court at that time, entered into and became a part of the contract, and will not be impaired by subsequent decisions to the contrary, as this court has just held in City of Clinton v. First National Bank et al., D.C., 39 F.Supp. 909, decided July 18, 1941.

■ At the time the bonds here under consideration were issued, the Oklahoma Court had held that the "debt" limit mentioned in Section 26, Article 10 of the Oklahoma State Constitution, upon which the city relies in attempting to avoid its obligation, did not apply to assessments for benefits by reason of public improvements levied against real estate owned by a municipal corporation. See, City of Perry v. Johnson, 106 Okl. 32, 233 P. 679. The fact that the property here in question was not municipally owned, does not change the situation, since the assessment which the city imposed upon itself in this instance was authorized by statute.

The city delivered its bonds in payment of the improvements which it made. It undertook by its own solemn enactment, and by its proper officers thereunto duly authorized, to pay from its general revenues over a period of ten years that part of the cost of such street improvement where it considered same in excess of the benefits made to lots or tracts in certain irregular blocks, as provided by statute. Moreover, it represented in its bonds that all things necessary had been done to constitute said bonds a valid and binding obligation.

■ The federal courts have held in a long line of cases that the city may become primarily liable to pay the street improvement bonds where it neglects or refuses to do all things necessary to levy the assessments or enforce the payment thereof. See, Oklahoma City v. Orthwein, 8 Cir., 258 F. 190 and cases therein cited.

■ The city is estopped from asserting the illegality or invalidity of its own acts because of the representations made in its bonds to the contrary. Moreover, this court holds that such acts were valid and were duly authorized by statute.

As stated in the second headnote in Board of County Com'rs v. Board of Finance, etc., 10 Cir., 100 F.2d 766: "Where municipal corporation has lawful authority to issue bonds on condition that certain facts exist or certain acts be done, and statute intrusts power and imposes duty on an official or officials to ascertain, determine and certify existence of such facts at time of issuing the bonds, certificate of such official or officials will estop municipality as against bona fide holder of bonds from proving its falsity to defeat bonds."

Judgment, therefore, is rendered against the City of Enid, Oklahoma, in favor of the plaintiff for those portions of the assessments levied by the above mentioned assessing ordinance against itself, together with interest and penalty as provided by the applicable statutes under which the obligation was created, and a form of judgment should be prepared, accordingly.

The other issues raised by the pleadings in this case have been decided in City of Clinton v. First National Bank et al., supra, which is adopted herein upon all questions where applicable.